John CONERLY and Barry L. Frasier, Appellants,

v.

Rose FLOWER, Appellee.

No. 19351.

United States Court of Appeals Eighth Circuit.

May 14, 1969.

942

Dale Edwards, of Atchley, Russell, Hutchinson & Waldrop, Texarkana, Tex., for appellants; Victor Hlavinka, Texarkana, Tex., on the brief.

Sherman A. Kusin, of Harkness, Friedman & Kusin, Texarkana, Tex. and Boyd Tackett, of Shaver, Tackett & Jones, Texarkana, Ark., for appellee.

Before GIBSON, LAY and HEANEY, Circuit Judges.

LAY, Circuit Judge.

Appeal is made from an order of the district court vacating a consent judgment on the ground of fraud and reinstating a verdict of a jury in a personal injury case. Relief was sought under Fed.R.Civ.P. 60(b) (3) [1] some seven months after judgment and satisfaction had been filed by reason of defendants' fraud and misrepresentation as to the amount of insurance coverage applicable to the defendants' vehicle. The basic issue on appeal is whether plaintiff is entitled to affirmative relief, by reinstatement of the jury verdict as the true judgment or simply to relief from the

1. Fed.R.Civ.P. 60(b) (3):
   "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party * * *."

consent judgment itself with a new trial being required.

The plaintiff was seriously injured in an automobile accident in Miller County, Arkansas. Along with two other passengers, who sustained lesser injuries, her case came to trial in the Western District of Arkansas with the Honorable Oren Harris presiding. After all of the testimony had been concluded but before submission to the jury, the defendants' attorney and one of the defendants himself represented to plaintiff that the maximum insurance coverage available to her for her injuries was $20,000.[2] She was offered $19,500 to settle her case. Relying upon these representations, plaintiff and her counsel agreed to settle her claim provided the defendants furnished her the insurance policies verifying the limited coverage involved. Defendants conditioned the settlement upon the plaintiff's agreement, acquiesced to by the trial court, that the jury not be told of the proposed settlement and that the trial proceed to verdict not only as to the remaining two parties but also as to the liability and damages relating to the plaintiff's case.

The trial thus proceeded. Arguments were made as if plaintiff's case had not been settled and verdicts against the defendants were returned in all three cases. A verdict of $40,000 was returned for plaintiff. However, based upon the prior stipulation of the parties the court noted in its entry of judgment that the parties had previously agreed not to be bound by the verdict and to accept in compromise the sum of $19,500. Thus the court entered judgment in the amount of $19,500.

Approximately seven months later the plaintiff, who had requested and had been promised disclosure of the actual policies of insurance, was refused the policy by one of the insurance carriers. Defendants' attorney admitted to plaintiff's attorney that he had previously been misinformed as to the amount of coverage. The insurance carrier still refuses to disclose to plaintiff the actual amount of coverage.[3]

Neither party disputes the right of the trial court to vacate the original consent judgment under Rule 60(b) (3) on the ground of the fraudulent misrepresentation. The defendants contend, however, that the trial court erred in "amending" the judgment and granting affirmative relief. Argument is made that amendment of judgment can only be effected under Fed.R.Civ.P. 59(e),[4] within ten days of the entry of judgment, and that such was not done here.

We think defendants' argument misconstrues the respective procedures involved. Rule 59(e) provides that a judgment can be amended or altered only within ten days of its entry in order to provide finality for purposes of appeal. In this sense it is similar to a motion for new trial under Rule 50(b); the time for appeal is tolled by the filing of a mo-

---

2. There was represented to be two $10,000 insurance policies which covered defendants' car, owned by Barry L. Frasier and driven by John Conerly.

3. This particular proceeding would not have ensued if pretrial disclosure had been made of the insurance limits involved. This case could well serve illustratively to trial courts to liberalize rules governing discovery as to insurance limits. See, e. g., Landkammer v. O'Laughlin, 45 F.R.D. 240 (S.D. Iowa 1968); Woldum v. Roverud Constr., Inc., 43 F.R.D. 420 (N.D. Iowa 1968); Slomberg v. Pennabaker, 42 F.R.D. 8 (M.D. Pa. 1967); Cook v. Welty, 253 F.Supp. 875 (D.D. C. 1966); Hodges v. Heap, 40 F.R.D. 314 (D.N.D. 1966); Ash v. Farwell, 37 F.R.D. 553 (D.Kan. 1965); Hurley v. Schmid, 37 F.R.D. 1 (D.Ore. 1965); Johanek v. Aberle, 27 F.R.D. 272 (D. Mont. 1961); Lucas v. District Court, 345 P.2d 1064 (Colo. 1959) (en banc). See also 4 Moore, Federal Practice ¶ 26.16[3] (2d ed. 1966). In many cases where the insured is not otherwise financially responsible early pretrial disclosure of insurance limits could help eliminate congested trial court dockets by encouragement of out of court settlements.

4. Fed.R.Civ.P. 59(e):
   "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment."

tion within the requisite time. Under Rule 60(b), on the other hand, the problem of finality is not involved; a motion under 60(b) does not affect the time for appeal nor the finality of the judgment itself. Thus to affirm the court's action in granting affirmative relief does not in any way, as defendants contend, defeat the purpose of the time limitation under Rule 59(e). See generally 6A Moore, Federal Practice ¶ 60.03 (2d ed. 1966).

■ A court in granting relief under Rule 60(b) is given broad discretion as to the type of relief it might grant. And a court in acting under 60(b) is given express authority to "impose just terms." See Thorpe v. Thorpe, 124 U.S.App.D.C. 299, 364 F.2d 692, 694 (1966); Bridoux v. Eastern Air Lines, Inc., 93 U.S.App. D.C. 369, 214 F.2d 207, 210 (1954). However, this does not mean that a court may circumvent due process or the Seventh Amendment and award damages or make findings without an evidentiary trial on the merits. Cf. Bishop v. United States, 266 F.2d 657 (5 Cir. 1959).

■ We find that the court did not alter or amend *the existing* judgment. In the instant case the trial court simply vacated the consent judgment and defendants do not now dispute its right so to do.[5] Once the court did this, it was faced with the question as to the further disposition of the case. It could grant a new trial, which would be the normal consequence where a trial on the merits had not taken place or it could consider the status of the record itself and determine if a verdict had been truly rendered upon which only the court's judgment was wanting. In making that decision it is significant to us that the trial judge who vacated the original judgment and entered the judgment on the actual verdict returned was the same judge who actually tried the case. In exercising his discretion Judge Harris was in a position to determine whether both parties had a full opportunity to present their

claim or defense and whether in fact a fair trial on the merits had actually been had. If the record had revealed anything to the contrary, we are confident Judge Harris would have ordered a new trial. The record discloses all of the evidence had been concluded. At the time of the agreement only the oral arguments and instructions remained before the case was to be finally submitted to the jury. It is further noteworthy that the defendants did not claim below nor do they assert here any lack of evidence or defense they did not assert in trying the claim. In this regard, we note that defendants' counsel proposed the completion of the trial without mention of the contemplated settlement and he stated before Judge Harris at the time of the stipulation that he would make the settlement "provided that it be specifically understood that there will be no mention of any settlement before that jury and that you will insist upon Mrs. Rose Flower receiving her entitlements before the jury with no indication that you want to minimize her entitlements." Under these circumstances we think Judge Harris' decision to render judgment upon the true verdict returned was a proper one.

Defendants urge, however, that the verdict was not a true verdict in that the litigation had been settled and that the parties were simply trying a moot case. We disagree that the issues actually tried ever became mooted to deprive the court of its jurisdiction. First, the stipulation not to be bound by the verdict has now been determined to have been fraudulently based. It has been set aside as has the vacated judgment which incorporated it. Here the fraud has vitiated the consent and the trial court, under these circumstances, had a right to view the record as if the stipulation had not been made.

■ Mootness exists if there is no longer sufficient adverse legal interests between the parties. This is best determined as set forth in Mills v. Green, 159

---

5. Although defendants deny the misrepresentation, the trial court's findings in this regard are not challenged on appeal.

U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895), wherein the Supreme Court said that a judicial tribunal cannot decide moot issues "which cannot affect the matter in issue in the case before it." This depends upon whether or not any adverse legal interests remained to be adjudicated between the parties. Under the circumstances existing here because of the defendants' initial fraud and their knowledgeable inability to perform their side of the bargain (production of the insurance policies verifying limited coverage), we find that the verdict conclusively resolved adverse legal interests *still existing* and was not otherwise rendered moot.

Moreover, the pre-verdict stipulation not to be bound by the jury verdict was itself of dubious legality for reasons of public policy.[6] Having properly invoked the jurisdiction of the court for a determination of an actual controversy, having requested full utilization of the machinery of the judicial process, of which the function of the jury is an integral part, to decide that controversy, a litigant's power to interfere with the integrity and conclusiveness of the fact-finding process by *preagreement* is at best questionable. The jurisdiction of the court can be invoked only to decide "Cases" or "Controversies." U.S.Const., Art. III § 2. Of course, parties may settle their differences during the trial and before verdict. In fact, they are encouraged to do so. But the very power of the court itself proscribes litigants from making a settlement contingent upon a proposed hypothetical exercise of the court's jurisdiction. Obviously parties

may also compromise any verdict reached or judgment entered. But such post-verdict agreements do not in any way interfere wth the integrity of the judicial process itself.

More importantly, it is well settled that litigants may not fraudulently create jurisdiction (compare 28 U.S.C. § 1359; Polito v. Molasky, 123 F.2d 258 (8 Cir. 1941)) or in any way corrupt the power of the court itself. See, e. g., Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250 (1944). A reasonable corollary to this rule is that a party cannot fraudulently deprive the court of its otherwise lawful jurisdiction to act. It is actually for the latter reason that the original judgment in the instant case was set aside. If it had not been for the fraud of defendants, the trial court would have entered judgment on the verdict rendered. The jury verdict itself was not fraudulently obtained. The fraud did not prevent the jury from hearing all of the evidence. In addition, no complaint is made that either the instructions or the oral arguments were rendered erroneously. The only corruption of the judicial power was in inducing the court not to enter the true verdict rendered. To hold that the trial court may not now act upon this verdict and *must* only grant a new trial is to render agency to the fraud itself. While it was within the discretion of the trial court to grant a new trial, we do not think that the court abused its discretion in entering a judgment herein.[7]

Judgment affirmed.

6. We think the better procedure would have been simply to withdraw the claim from the jury's consideration with an instruction to the jury that the fact that said claim had been withdrawn was not In any way to be considered in the trial of the remaining issues.

7. In the hearing to vacate the original judgment the trial court set aside the release involved. In defendants' original brief on appeal, the right of the trial court to do this is not questioned. In fact, defendants' brief states:

"In this regard, Appellants readily concede that as a general proposition, a court may set aside a release where such release is procured by a misrepresentation as to the material facts."
Defendants have filed a supplemental brief, which this court allowed for the sole purpose of citing supplemental authority. Within the brief, and for the first time, defendants raise the claim that before the release can be set aside defendants are entitled to a jury trial thereon, notwithstanding the power of the trial judge to vacate the judgment. Although

we deem the point waived as not properly raised on appeal (see Earle R. Hanson & Associates v. Farmers Cooperative Creamery Co., 403 F.2d 65 (8 Cir. 1968", we take caution to point out we do not specifically pass upon the propriety of the procedure followed in setting aside the release in a 60(b) motion. We note, however, that the release was obviously based upon the fraudu-

lent judgment obtained, and there could be little question as to any subsequent determination by separate summary judgment or otherwise of its invalidity.

However, all that is decided here is that the trial court had the power to vacate the judgment under 60(b); that it then had the discretion to grant a new trial or enter a new judgment on the true verdict rendered.