**Shirley DORE, Individually and as the Mother and Natural Guardian Ad Litem of Natan Lenjo, Plaintiffs,**

v.

**George P. SCHULTZ, Individually and as Secretary of State and The United States Department of State, Defendants.**

**No. 83 Civ. 2649 (DNE).**

United States District Court,
S.D. New York.

March 8, 1984.

Walker & Bailey, New York City, for plaintiffs; Cora T. Walker, New York City, of counsel.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, for defendants; Thomas Mosely, Asst. U.S. Atty., New York City, of counsel.

## MEMORANDUM OPINION AND ORDER

EDELSTEIN, District Judge:

This suit was instituted pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, ("FTCA"). Plaintiffs, Shirley Dore and her infant son, seek tort damages from the defendants for injuries which, plaintiffs allege, resulted from defendants' negligent enforcement of the Immigration and Nationality Act, 8 U.S.C. § 1101, *et seq.* Defendants have moved to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(1)–(3), (5) and (6).

## FACTUAL BACKGROUND

Plaintiff Shirley Dore is a United States citizen residing in Manhattan. In 1975 Ms. Dore met and formed a relationship with Everest Lenjo, a native of Kenya, East Africa, who was then in the United States. As a result of this relationship plaintiff gave birth on September 15, 1979 to Natan Lenjo, the infant plaintiff, who is a United States citizen.

Ms. Dore and Mr. Lenjo never married, and Ms. Dore retained physical custody of the child. The government contends that in October, 1980 Ms. Dore entered into an informal arrangement with Mr. Lenjo that permitted him to have custody of his son during the day while Ms. Dore, a New York City school teacher, was at work. *See* Affidavit of Thomas F. Mosely sworn to July 29, 1983 ("Mosely Aff."), ¶ 2, Ex. A.

While the child was with his natural father on October 28, 1980 and without prior knowledge or consent of Ms. Dore, Everest Lenjo returned to Kenya with the infant. Complaint, ¶ 13. The infant did not have a passport. Complaint, ¶ 15.

After learning that Everest Lenjo had taken the child to Kenya, plaintiff contacted the Department of State ("Department") on November 10, 1980 for assistance in locating the child and recovering custody. Mosely Aff. ¶ 3, Ex. B. Since then, the Department has cooperated with Ms. Dore in her attempt to regain custody of her son.[1] Despite the efforts by the Department on her behalf, plaintiff filed an administrative tort claim with the Department on August 3, 1982 alleging that the Department was negligent in permitting Natan Lenjo to leave the country without a passport and demanding damages in the amount of $2,250,000. Mosely Aff. ¶ 10, Ex. J. By letter dated June 9, 1983 the Department notified plaintiff that her claim had been denied. Mosely Aff. ¶ 12, Ex. K.

Plaintiff then instituted the present action seeking tort damages for the defendants' negligent failure to enforce § 215(b) of the Immigration and Nationality Act, 8 U.S.C. § 1185(b), which makes it "unlawful for any citizen of the United States to depart from ... the United States unless he bears a valid passport." The court has before it defendants' motion to dismiss the action pursuant to Fed.R.Civ.P. 12.

## DISCUSSION

■ The plaintiffs bring this action against the United States Department of State and George P. Schultz, sued in his individual capacity and as Secretary of State. The claims against the State Department can be dismissed in short order. A federal agency simply cannot be sued *eo nominee. See Blackmar v. Guerre*, 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952); *Lynn v. United States Department of Health and Human Services*, 583 F.Supp. 532 (S.D.N.Y.1983) (Pollack, J.) This ground alone is a sufficient basis for dismissing the claims against the Department. *See Lynn, supra.*

■ The claims brought against the Secretary of State in his individual capacity also can be promptly dismissed. The alleged negligence occurred in October, 1980, well before Mr. Schultz was the Secretary of State. Not surprisingly, then, the complaint fails to allege the direct personal involvement of Secretary Schultz in the alleged negligence that gives rise to this action. This defect is fatal to the claims against the Secretary of State in his individual capacity. *See, e.g., Black v. United States*, 534 F.2d 524, 527–28 (2d Cir.1976) (doctrine of *respondeat superior* does not satisfy pleading requirements in actions against federal officials under 42 U.S.C. § 1983). Furthermore, since plaintiffs' claims against Secretary Schultz are for common-law torts, they are barred by the absolute immunity that continues to protect federal officials from such suits.[2] *See, e.g., Granger v. Marek*, 583 F.2d 781, 784 (6th Cir.1978); *Evans v. Wright*, 582 F.2d 20, 21 (5th Cir.1978) (per curiam); *Economou v. Butz*, 466 F.Supp. 1351, 1358–59 (S.D.N.Y. 1979), *aff'd mem.*, 633 F.2d 203 (2d Cir. 1980).

Having disposed of the claims against the Department and Secretary Schultz in his individual capacity, the court now considers the claims against Secretary Schultz in his official capacity as Secretary of State.

■ Under the doctrine of sovereign immunity the United States is immune from suit except as it consents to be sued. The Federal Tort Claims Act, 28 U.S.C.

---

**1.** The authority of the Department is limited solely to locating the child, monitoring his welfare upon the request of a parent, making available general information on foreign law and procedure, and furnishing judicial assistance. *See* 22 C.F.R. §§ 71.1, 71.6, 92.81 and 92.82.

**2.** Secretary Schultz has also moved to dismiss the complaint for lack of personal jurisdiction, improper service and improper venue. The court need not reach these other grounds for dismissal since the complaint can be dismissed on the grounds discussed above.

§§ 1346(b) and 2671, *et seq.*, generally waives immunity with respect to tort claims "under circumstances where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred.*" 28 U.S.C. § 1346(b) (emphasis supplied). Here the law of New York is controlling.[3] Under New York law a breach of an actionable duty owed to the plaintiff is an essential element of liability for negligence. Thus, the critical question here is whether the State Department's staff at Kennedy International Airport owed a duty to inquire whether the infant plaintiff had a valid passport and to prevent him from leaving the country if he did not possess one and was not legally carried on his father's passport.

There are two possible sources of a duty here: one created by the federal statute itself and the other recognized under New York law.

Section 215(b) of the Immigration and Nationality Act of 1952 ("Act"), 8 U.S.C. § 1185(b), provides:

Except as otherwise provided by the President, and subject to such other limitations as the President may authorize and prescribe, it shall be unlawful for any citizen of the United States to depart from or enter ... the United States unless he bears a valid passport.

The Department of State has the authority to enforce this provision of the Act. *See* 8 U.S.C. § 1104. It does not follow from this, however, that the statute creates an actionable duty. Indeed, courts have repeatedly held that the negligent enforcement of federal statutes and regulations does not automatically result in governmental liability under the FTCA. *See, e.g., United Scottish Ins. Co. v. United States*, 614 F.2d 188, 195 & n. 6 (9th Cir.1979); *Clemente v. United States*, 567 F.2d 1140, 1145–46 (1st Cir.), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978);

*In re Franklin Nat'l Bank Sec. Litig.*, 445 F.Supp. 723, 730–31 (E.D.N.Y.1978).

■ Moreover, it is clear from the legislative purpose behind section 215(b) that the Act does not create a duty, the breach of which would give rise to an action under the FTCA. The postwar version of this section was enacted in 1952 and was intended to provide the President with emergency power to prevent renegade Americans from traveling abroad to harm our national security. *See Haig v. Agee*, 453 U.S. 280, 299–300 & n. 47, 101 S.Ct. 2766, 2777–2778 & n. 47, 69 L.Ed.2d 640 (1981). In 1978, section 215(b) was amended to its present version. The amendment removed all civil and criminal penalties for any violation of section 215(b). The purpose of this section as set forth in the legislative history of the amendment was to insure that United States citizens leaving this country would have a passport which would facilitate their entrance into the foreign country of their destination. *See* 124 Cong.Rec. H. 4689–90 (daily ed. May 31, 1978). In other words, it was intended to "facilitate travel, not to obstruct it and cover it with penal overtones." *Id.* at 4689 (statement of Rep. Eilberg). The underlying intent of section 215(b) reveals that the Act creates no actionable duty upon the government to check whether the infant plaintiff had a valid passport and to prevent him from leaving the United States with his natural father.

■ Having determined that no actionable duty was created by federal statute, the court now considers whether New York law recognizes a comparable private liability. An analogous situation is that of a municipal corporation charged with negligently failing to enforce a statute or regulation. It has long been the rule in New York that, "in the absence of some special relationship creating a duty to exercise care for the benefit of particular individu-

3. Although the pleadings fail to allege where the defendants' actions occurred, both parties indicate in their supporting papers that it occurred at John F. Kennedy International Airport in New York. *See* "Plaintiff's Memorandum in Opposition To Motion To Dismiss", at 8; "Defendant's Memorandum In Support Of Motion To Dismiss", at 11. For the purposes of this motion the court concludes that the alleged negligence occurred in New York.

als, liability may not be imposed on a municipality for failure to enforce a statute or regulation." *O'Connor v. City of New York,* 58 N.Y.2d 184, 192, 447 N.E.2d 33, 36, 460 N.Y.S.2d 485, 488 (1983); *accord Quinn v. Nadler Bros., Inc.,* 59 N.Y.2d 914, 914, 453 N.E.2d 521, 522, 466 N.Y.S.2d 292, 293 (1983). In *O'Connor,* for example, an action was brought against the City of New York, among others, for the city inspector's failure to discover a leak in a gas system that ultimately caused an explosion. The City of New York was not held liable despite the court's finding that the inspector had negligently enforced city regulations requiring every part of a new or altered gas piping system to be inspected. These regulations were designed "to protect persons from death, injury or property damage ... in the broad sense of protecting all members of the general public similarly situated." *Id.* 58 N.Y.2d at 190, 447 N.E.2d at 35, 460 N.Y.S.2d at 487. The regulations, however, did not create a duty to the plaintiffs as individuals since "there has been shown no special relationship as would establish a municipal duty to these particular plaintiffs." *Id.*

◼ In *O'Connor,* the negligently enforced regulations were intended to benefit the plaintiffs, albeit as members of the community. Yet the court found that no special relationship justifying liability existed. In the instant action, section 215(b) of the Act, which plaintiffs claim the State Department failed to enforce, was not intended to benefit plaintiffs. As discussed previously, the purpose of section 215(b) was to facilitate travel; it was not intended to place the United States in a guardianship role for custody purposes. It follows *a fortiori* that no special relationship exists creating a duty to exercise care for the benefit of the named plaintiffs.

Inasmuch as no actionable duty owed to plaintiffs was created by federal statute and prevailing New York law fails to recognize a cause of action under the circumstances presented in this case, no liability may be imposed on the federal government pursuant to the FTCA.

◼ Rule 11 of the Federal Rules of Civil Procedure requires the plaintiffs' attorney to certify, on pain of sanction, that to the best of his knowledge, information and belief the complaint is warranted by existing law or a good faith argument for the extension of existing law. The court finds that this action was brought in violation of that rule. As the foregoing discussion reveals, this is a frivolous lawsuit, completely lacking in merit. The court is mindful of the recent observation made by the Supreme Court in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), to the effect that insubstantial lawsuits against high public officials "undermine the effectiveness of Government as contemplated by our constitutional structure." *Id.* at 819 n. 35, 102 S.Ct. at 2739 n. 35. Such cases, the Court stressed, warrant a " 'firm application of the Federal Rules of Civil Procedure.' " *Id.* (quoting *Butz v. Economou,* 438 U.S. 478, 504, 98 S.Ct. 2894, 2909, 57 L.Ed.2d 895 (1978)). Accordingly, the attorney for plaintiffs is sanctioned in the amount of two hundred dollars payable as a fine into the Registry of this court within 20 days of the filing of this opinion.

By reason of the foregoing, the defendants' motion pursuant to Fed.R.Civ.P. 12 is granted and the complaint is dismissed in its entirety [4] and the attorney for the plaintiffs is sanctioned in the amount as set forth above.

SO ORDERED.

---

4. Plaintiffs have requested leave to amend the complaint. This request is denied since amend-ing the complaint cannot cure all the defects in the pleading.