Ray ADDUONO, et al., Plaintiffs,

v.

WORLD HOCKEY ASSOCIATION, et al., Defendants.

No. 3–82 Civ. 586.

United States District Court, D. Minnesota.

Feb. 4, 1986.

Opperman & Paquin by Richard A. Lockridge and Alison Colten, Minneapolis, Minn., for defendants World Hockey Ass'n, New England Whalers, Le Club De Hockey Les Nordiques, Inc., Edmonton World Hockey Enterprises Ltd., Winnipeg Hockey Club, Inc., Sports Centrepoint Enterprises, Ltd., Howard Baldwin, Benjamin Hatskin, Peter Pocklington, John Dacres, Jack McKeag and A.J. Mercury.

Maslon, Edelman, Borman & Brand by Gary J. Haugen, Minneapolis, Minn., for defendant Nat. Hockey League.

Maun, Green, Hayes, Simon, Johanneson & Brehl by Jerome B. Simon and Garrett E. Mulroney, St. Paul, Minn., for Charles L. Abrahams.

### ORDER

ALSOP, Chief Judge.

This matter came before the court on December 23, 1985, on a motion by defendant World Hockey Association, which defendant National Hockey League joins. Defendants move for return of counsel fees, damages, and sanctions against Charles L. Abrahams, counsel for plaintiffs in this action.

The facts giving rise to defendants' motion are recounted in the court's order of October 24, 1985, and these facts are incorporated herein by reference. They need only be summarized here.

In late 1984, all counsel for the parties signed a Settlement Agreement. Charles L. Abrahams executed the agreement on December 8, 1984. The agreement provided:

> 6. Each of the undersigned counsel for the Plaintiffs hereby represent that they are not presently retained to represent, have not been requested to represent, and have not offered to represent, either as counsel, agents, or in any other capacity any other individual, corporation, partnership or other legal entity for the purpose of pursuing any claim of any kind, either asserted or unasserted, against the National Hockey League or any of its Member Clubs, or against the WHA or any of its former Member Clubs, ....

In addition, the Settlement Agreement provided:

> [P]aragraph 1 [the provision reciting payments to be made] is based and conditioned upon ... (b) the representations made by Plaintiffs' counsel in paragraph 6.

Abrahams and other counsel also executed a Stipulation of Dismissal with Prejudice. This document was filed with the court on December 14, 1984.

As recounted in the court's order of October 24, 1985, it has become clear that at the time of the settlement Abrahams had in fact offered the services of the law firm of Kolodny, Katkov & Pressman to approximately 155 individuals for the purposes of pursuing legal claims against the World Hockey Association and the National Hockey League. Abrahams had a contract at that time under which he was to receive for his "services" one-half of all monies recovered by the Kolodny, Katkov firm as fees for bringing such claims. The court found that Charles Abrahams' conduct violated the representations made in the settlement agreement and was in direct violation of paragraph 6 thereof. The court further found the representations contained in paragraph 6 of the Settlement Agreement to be a misrepresentation of facts then known to Abrahams.

The defendants request several forms of relief. First, they seek an order requiring Abrahams to return to defendants all fees derived from defendants' settlement payments. Second, defendants seek an order requiring Abrahams to indemnify them for their reasonable costs, disbursements, and attorney's fees in defending the *Chernoff v. National Hockey League* litigation begun in the Southern District of California by the Kolodny, Katkov firm. Third, defendants seek costs, disbursements and attorney's fees in prosecuting this motion. Fourth, defendants seek an order trebling the damages assessed in their favor pursuant to Minn.Stat. §§ 481.07 and 481.071 (1984). Finally, defendants seek a monetary sanction of $25,000 against Abrahams.

### DISCUSSION

Defendants' requests for relief derive from two distinct legal bases. Their first, second and fourth requests are premised on the theory that Abrahams breached the Settlement Agreement to the defendants' detriment. Defendants seek damages for this breach in the form of Abrahams' fees derived from the defendants' settlement payment and the defendants' costs, disbursements, and attorney's fees incurred in

defending the *Chernoff* litigation. Defendants then seek trebling of these damages pursuant to Minn.Stat. §§ 481.07 and 481.-071. Defendants' request for a monetary sanction derives from the court's inherent authority and authority under Fed.R.Civ.P. 11 to discipline attorneys who abuse the judicial process. Finally, defendants' request for attorney's fees incurred in prosecuting this motion derives from both legal bases.

■ Defendants may have cognizable breach of contract and misrepresentation claims arising out of Abrahams' conduct in this case. This court may also have authority to enforce the Settlement Agreement by awarding damages based on these claims. *See Gardiner v. A.H. Robins Co., Inc.,* 747 F.2d 1180, 1190 n. 13 (8th Cir. 1984); *Aro Corp. v. Allied Witan Co.,* 531 F.2d 1368, 1371 (6th Cir.), *cert. denied,* 429 U.S. 862, 97 S.Ct. 165, 50 L.Ed.2d 140 (1976); *Conerly v. Flower,* 410 F.2d 941, 945 (8th Cir.1969). Resolution of such claims, however, would require the court to inquire further into Abrahams' involvement in the *Chernoff* litigation. In addition, the court would have to assess the ultimate merits of the *Chernoff* case. This court is ill-situated to make such inquiry, however, and resolution of these issues is best left to other forums. Accordingly, the court denies defendants' request for damages arising out of Abrahams' breach of the Settlement Agreement.

Federal Rule of Civil Procedure 11 states in part:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record.... The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose,

such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

■ As amended in 1983, Rule 11 attempts to deal with abuses in the signing of pleadings by building upon and expanding the equitable doctrine permitting the court to award expenses, including attorney's fees, to a litigant whose opponent acts in bad faith in instituting or conducting litigation. Fed.R.Civ.P. 11, Notes of Advisory Committee on Rules, 1983 amendment (Advisory Committee Note). *See, e.g., Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764–65, 100 S.Ct. 2455, 2463–64, 65 L.Ed.2d 488 (1980); *Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973). The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. *In re: Sutter,* 543 F.2d 1030, 1037–38 (2d Cir.1976); *Flaksa v. Little River Marine Construction Co.,* 389 F.2d 885, 888 (5th Cir.), *cert. denied,* 392 U.S. 928, 88 S.Ct. 2287, 20 L.Ed.2d 1387 (1968); *see also Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 257, 95 S.Ct. 1612, 1621, 44 L.Ed.2d 141 (1975) (general rule precluding litigants' recovery of attorney's fees does not apply when opposing party acts in bad faith).

■ The court's authority is not limited to dealing with acts of bad faith in instituting litigation. Instead, conduct in the course of litigation may also constitute bad faith. Advisory Committee Note; *In re: Itel Securities Litigation,* 596 F.Supp. 226, 233 (N.D.Cal.1984). *See Hall v. Cole,* 412 U.S. 1, 15, 93 S.Ct. 1943, 1951, 36 L.Ed.2d

702 (1973). This authority permits courts to assess sanctions against attorneys who abuse the settlement process. *See Itel Securities Litigation,* 596 F.Supp. at 233.

▌ Rule 11 permits imposition of monetary sanctions against attorneys and parties who violate its terms. *Badillo v. Central Steel and Wire Co.,* 717 F.2d 1160, 1166–67 (7th Cir.1983); *Dore v. Schultz,* 582 F.Supp. 154, 158 (S.D.N.Y.1984); *Booker v. Atlanta,* 586 F.Supp. 340, 341 (N.D. Ga.1984). Such a monetary sanction may include a reasonable attorney's fee. *Taylor v. Prudential-Bache Securities, Inc.,* 594 F.Supp. 226, 228 (N.D.N.Y.), *aff'd,* 751 F.2d 371 (2d Cir.1984).

Defendants have brought this action to enforce Rule 11's strictures against Charles Abrahams. In *In re: Itel Securities Litigation,* 596 F.Supp. 226 (N.D.Cal. 1984) (*Itel Securities* ), the court held that Rule 11 offers no relief to parties who bring an action to enforce the rule. *Id.* at 234. In other words, the court held that it could award fees and sanctions pursuant to Rule 11 only for expenses incurred in responsive or defensive actions. *Id. See Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078 (2d Cir. 1977). Thus, the *Itel Securities* court ascribed to Rule 11 only a compensatory purpose.

In its Note to Rule 11, the Advisory Committee on Rules wrote,

> "the word 'sanctions' in the caption ... stresses a deterent orientation in dealing with improper pleadings, motions, or other papers.... The court retains the necessary flexibility to deal appropriately with violations of the rule. It has discretion to tailor sanctions to the particular facts of the case, with which it should be well acquainted."

Other courts have recognized that Rule 11 serves both a deterent and a compensatory purpose, and have assessed sanctions not intended merely to compensate injured litigants. *Taylor v. Prudential-Bache Securities, Inc.,* 594 F.Supp. 226, 229 (N.D.N.Y. 1984); *Young v. IRS,* 596 F.Supp. 141, 152 (N.D.Ind.1984); *Dore v. Schultz,* 582 F.Supp. 154, 158 (S.D.N.Y.1984). *See also Textor v. Board of Regents of N. Ill. Univ.,* 711 F.2d 1387, 1396 (7th Cir.1983) ("the primary purpose of an award against counsel is to punish, and, we hope, deter counsel from undertaking frivolous lawsuits").

▌ The *Itel Securities* court's position is a reasonable one when the conduct alleged to be improper of itself necessitates further proceedings, regardless of the conduct's impropriety. In the matter now before this court, however, Charles L. Abrahams improperly obtained an order of this court dismissing his clients' lawsuit and ending the litigation. Strictly speaking, Abrahams' actions necessitated no responsive or defensive efforts on the defendants' part. Any effort by the defendants to bring Abrahams' misconduct to the court's attention necessarily would occur in an offensive posture. Were this court to adopt the position set forth in the *Itel Securities* decision, Abrahams would succeed in depriving the court of its authority to respond to his improper conduct. It is well-settled that a party cannot fraudulently deprive the court of its otherwise lawful jurisdiction to act. *Conerly v. Flower,* 410 F.2d 941, 945 (8th Cir.1969). Accordingly, the court holds that under the circumstances Rule 11 authorizes the court to assess sanctions and reasonable attorney's fees in an offensive action brought by opposing counsel against an attorney who employs an improperly procured stipulation of settlement to obtain an order dismissing a lawsuit.

▌ During arguments before this court, Abrahams took several positions with respect to the applicability of Rule 11 to which the court must respond. First, Abrahams does not believe the false representation made in the Settlement Agreement "rises to the level of a violation" of Rule 11. Under Rule 11, however, Abrahams' signature on the Stipulation of Settlement constitutes certification by him that the stipulation was not "interposed for any improper purpose." To the contrary, Abrahams signed the Stipulation and per-

mitted it to be filed for the purpose of deriving benefit from the false assurances made in the Settlement Agreement. Abrahams ultimately profited from the settlement of this action. Obtaining such reward through false assurances to opposing parties and the court itself clearly is a most improper purpose.

▇ Abrahams also contends that he did not violate Rule 11 because the commitment he made in the Settlement Agreement to refrain from representing other plaintiffs with similar claims against the defendants was a commercial agreement. Abrahams thus contends he acted as a commercial party to the agreement, rather than as an officer of the court. This argument is neither persuasive nor relevant. The court rejects the notion that an attorney can shed his professional responsibilities as easily as Abrahams attempted to do in this action. Moreover, Rule 11 imposes a duty of honesty and forthrightness on both attorneys and parties alike, and authorizes the court to sanction improper conduct by either.

▇ Finally, Abrahams contends that the defendants' proper course in this action would be to institute another lawsuit to enforce the settlement agreement and recover damages caused by Abrahams' misrepresentations. Abrahams probably is correct in contending this route is available to defendants. Nevertheless, it clearly must not be demanded of them. Rule 11's essential purpose is to streamline the litigation process by lessening frivolous claims or defenses and deterring improper conduct of litigation. *See* Advisory Committee Note. As the Advisory Committee wrote:

> To assure that the efficiency achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record.

*Id.* Therefore, it is appropriate that the court address defendants' request for sanctions at this time.

▇ Because the court's authority to grant sanctions, costs, and attorney's fees does not derive from legislative enactment, it must be exercised with restraint and discretion. *See Roadway Express, Inc. v. Piper,* 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980); *In re: Itel Securities Litigation,* 596 F.Supp. 226, 232 n. 7 (N.D.Cal.1984). In the court's order dated October 24, 1985, the parties were given ample notice of the court's intention to consider sanctions against Mr. Abrahams for his misconduct in this action. Mr. Abrahams appeared through counsel on December 23, 1985, to oppose the imposition of sanctions. Nothing more, including a jury trial, is required. *In re: Itel Securities Litigation,* 596 F.Supp. at 232–33 n. 7; *see Roadway Express, Inc. v. Piper,* 447 U.S. at 767, 100 S.Ct. at 2464. Indeed, anything more would violate the spirit and intent of Rule 11. *See* Advisory Committee Note.

The court possesses both inherent authority and authority under Rule 11 to assess sanctions, costs, and reasonable attorney's fees against Mr. Abrahams for his patent violations of his obligation as an attorney to conduct himself honestly and forthrightly before the court. Accordingly the court imposes a fine in the amount of $5,000.00 upon Charles L. Abrahams, to be paid in equal proportions to the defendant National Hockey League and the defendant World Hockey Association. The court also notes that defendants' "offensive" efforts to obtain relief from Mr. Abrahams' improper conduct presented the only available method of bringing this conduct to the court's attention. Under these peculiar circumstances, the court declines to employ a rigid defensive-offensive analysis that in this case would relieve Abrahams of all liability for his misconduct. Neither parties nor the court must tolerate misconduct such as Mr. Abrahams'. The court feels compelled to lessen the financial burden on parties who take a hand in combatting such abuse of the litigation process. Accordingly, an award of attorney's fees is appropriate in this instance.

Defendant National Hockey League has incurred attorney's fees in the amount of $11,700.00 for legal services directly related to this matter. Defendants World Hockey Association, Edmonton World Hockey Enterprises, Ltd., Hartford Whalers Hockey Club and Le Club De Hockey Les Nordiques, have incurred attorney's fees, costs, and expenses in the amount of $14,674.17 in the prosecution of this motion. Without disparaging the quality or questioning the quantity of effort expended by the defendants, the court nevertheless notes the extensive duplication of effort in the separate preparation by the moving defendants. The court also recognizes the need for restraint in exercising its authority to award attorney's fees. Accordingly, the court assesses attorney's fees against Mr. Abrahams in the amount of $3,000.00 to be paid to defendant World Hockey Association, et al., and in the amount of $2,000.00 to be paid to defendant National Hockey League.

Based upon the foregoing, all records and files herein, and the submissions and arguments of parties.

IT IS HEREBY ORDERED That defendants' request for an order requiring Charles L. Abrahams to return to defendants all fees derived from defendants' settlement payments is denied.

IT IS FURTHER ORDERED That defendants' request for an order requiring Abrahams to indemnify them for their reasonable costs, disbursements, and attorney's fees in defending the *Chernoff v. National Hockey League* litigation begun in the Southern District of California is denied.

IT IS FURTHER ORDERED That defendants' request for an order trebling the damages assessed in favor of them pursuant to Minn.Stat. §§ 481.07 and 481.071 (1984), is denied.

IT IS FURTHER ORDERED That Charles L. Abrahams be and hereby is fined in the amount of $5,000.00, to be paid in equal proportions to defendant National Hockey League and defendant World Hockey Association, et al. within 20 days after the date of this order from funds escrowed with the law firm of Oppenheimer, Wolff, Foster, Shepard and Donnelly pursuant to the court's Order of October 24, 1985.

IT IS FURTHER ORDERED That attorney's fees incurred by defendants in prosecuting this motion be assessed against Charles L. Abrahams in the amount of $3,000.00 payable to defendant World Hockey Association, et al., and $2,000.00 payable to defendant National Hockey League to be paid within 20 days after the date of this order from funds escrowed with the law firm of Oppenheimer, Wolff, Foster, Shepard and Donnelly pursuant to the court's Order of October 24, 1985.

IT IS FURTHER ORDERED That the remainder of the funds held in escrow by the law firm of Oppenheimer, Wolff, Foster, Shepard and Donnelly, the disposition of which is not otherwise provided for in this order, be released from escrow and paid to Charles L. Abrahams pursuant to the terms of the Settlement Agreement between the parties.

IT IS FINALLY ORDERED That the effect of this order be stayed until 20 days after the date of this order.