# RIVERDALE COTTON MILLS, PETITIONER v. ALABAMA AND GEORGIA MANUFACTURING COMPANY.

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 194. Argued April 5, 6, 1905.—Decided May 8, 1905.

A Federal court exercising a jurisdiction apparently belonging to it, may thereafter, by ancillary suit, inquire whether that jurisdiction in fact existed, and may protect the title which it has decreed as against all parties to the original suit and prevent any of such parties from relitigating questions of right already determined.

Where parties litigate in a Federal court whose jurisdiction is invoked

on the ground of diverse citizenship, alleged and admitted, the judgment or decree which is entered is conclusive and cannot be upset by either of them in any other tribunal on the mere ground that diverse citizenship did not actually exist.

In an ancillary suit a party to the original action cannot challenge the jurisdiction of the Circuit Court in the original action on the ground that its admission of citizenship was an error and that a correct statement would have disclosed a lack of jurisdiction.

Although where two corporations of the same name, chartered by different States, exist and there has been no merger, the corporations are separate legal persons, the court may, where the circumstances as in this case justify it, look beyond the formal and corporate differences and regard substantial rights rather than the mere matter of organization.

Federal tribunals are not moot courts, and parties having substantial rights must, when brought before those tribunals, present those rights or they may lose them.

ON February 7, 1866, an act passed the Alabama legislature incorporating five persons named, their associates and successors, as "The Alabama and Georgia Manufacturing Company." On March 21, 1866, the Georgia legislature incorporated the same individuals under the same name, "The Alabama and Georgia Manufacturing Company." The purposes of the two corporations were identical. Among others, the use of the water power of the Chattahoochee River, the boundary line between Alabama and Georgia, was contemplated, and the Georgia act specifically authorized the corporation "to carry on any of the business and manufactures, or any branch or branches of the same, in this State that said charter authorizes them to engage in or carry on in the State of Alabama." On January 2, 1884, the Alabama and Georgia Manufacturing Company executed a trust deed, conveying property, situate partly in Georgia and partly in Alabama, but practically only a single plant, to J. J. Robinson, W. C. Yancey and W. T. Huguley, as trustees, to secure the payment of sixty-five thousand dollars of the mortgage bonds. There is nothing in the trust deed to indicate whether it was executed by the Alabama corporation or the Georgia corporation, except it be the mention of West Point, Georgia, as the location of the company's office.

On February 28, 1890, the Huguley Manufacturing Company was incorporated under the laws of the State of Alabama, and subsequently acquired by purchase all the property included within the trust deed. Default having been made in the payment of interest on the bonds, Robinson, one of the trustees and a citizen of Alabama, on January 21, 1891, filed a bill of foreclosure in the Circuit Court of the United States for the Northern District of Georgia against the Alabama and Georgia Manufacturing Company, the Huguley Manufacturing Company, each of which was alleged to have been created under the laws of the State of Georgia and a resident and citizen of that State, and against W. T. Huguley, also averred to be a citizen of the State of Georgia, and all three residing within the Northern District of Georgia. In the bill the plaintiff alleged that Yancey, one of the trustees, was dead; that Huguley, the other trustee, was interested adversely to the bondholders, and that plaintiff was, therefore, the only one authorized to bring the suit. A vast amount of litigation concerning the property has followed the commencement of this foreclosure suit, as partially appears from the following references: *Robinson* v. *Alabama & G. Mfg. Co.*, 48 Fed. Rep. 12 (1891); *Robinson* v. *Alabama & G. Mfg. Co.*, 51 Fed. Rep. 268 (1892); *Alabama & G. Mfg. Co.* v. *Robinson*, 56 Fed. Rep. 690 (1893); *Robinson* v. *Alabama & G. Mfg. Co.*, 67 Fed. Rep. 189 (1894); *Alabama & G. Mfg. Co.* v. *Robinson*, 72 Fed. Rep. 708 (1896); *Robinson* v. *Alabama & G. Mfg. Co.*, 89 Fed. Rep. 218 (1898); *Huguley Mfg. Co.* v. *Galeton Cotton Mills*, 94 Fed. Rep. 269 (1899); *Huguley Mfg. Co.* v. *Galeton Cotton Mills*, 175 U. S. 726 (1899); *Riverdale Cotton Mills* v. *Alabama & G. Mfg. Co.*, 111 Fed. Rep. 431 (1901); *Huguley Mfg Co.* v. *Galeton Cotton Mills*, 184 U. S. 290 (1902); *In re The Huguley Mfg. Co.*, 184 U. S. 297 (1902); *Alabama & G. Mfg. Co.* v. *Riverdale Cotton Mills*, 127 Fed. Rep. 497 (1904).

On May 2, 1901, the Alabama and Georgia Manufacturing Company of Alabama and the Huguley Manufacturing Com-

pany of the same State filed their bill in the Chancery Court of the First District of the Northeastern Division of the State of Alabama, in which they alleged that the plaintiff, the Alabama and Georgia Manufacturing Company, was at one time the owner of the property included within the trust deed hereinbefore referred to; that it executed that deed to the parties named as trustees; that a foreclosure suit was commenced by one of the trustees, J J. Robinson, in the United States Circuit Court for the Northern District of Georgia; that the parties named as defendants therein were the Alabama and Georgia Manufacturing Company, alleged to be a corporation organized under the laws of Georgia, the said Huguley Manufacturing Company, and W. T. Huguley. The bill set out with some detail the proceedings in the Circuit Court of Georgia, but alleged that they were null and void so far as concerns the title of the plaintiffs in that suit. The bill sought to redeem the property described from the lien of the bonds and trust deed. On June 10, 1891, this petitioner, a corporation which had acquired all the title to the property described in the trust deed passing under the foreclosure proceedings hereinbefore referred to, filed in the Circuit Court for the Northern District of Georgia an ancillary bill to restrain the further prosecution of the suit in the state court in Alabama. A temporary injunction was issued, which on final hearing was made perpetual. Thereupon defendants took an appeal to the Circuit Court of Appeals for the Fifth Circuit, which reversed the decree of the Circuit Court and ordered that the case be remanded to that court with instructions to dismiss the bill. The case was then brought here on certiorari.

*Mr. Louis D. Brandeis,* with whom *Mr. Thomas H. Watts* and *Mr. William H. Dunbar* were on the brief, for petitioner.

*Mr. Marion Erwin,* with whom *Mr. John T. Morgan, Mr. John M. Chilton, Mr. William S. Thorington* and *Mr. Robert Porter Shick* were on the brief, for respondents.

MR. JUSTICE BREWER,. after making the foregoing state-
ment, delivered the opinion of the court.

For over ten years, from January 21, 1891, the date of the
filing of the original bill, litigation was carried on in the Circuit
Court of the United States for the Northern District of Georgia,
and in appellate courts, in the foreclosure of a trust deed ex-
ecuted by the Alabama and Georgia Manufacturing Company.
In the course of that litigation decrees were entered and re-
versed, sales were made and set aside, possession of property
was transferred and retransferred, accountings had as to the
proceeds of property in possession, and when it seemed that
at last litigation was at an end, the foreclosure consummated
and the title established in the purchaser, we are told that it
all amounted to nothing; that parties, lawyers and courts have
been spending their time and labor in simply beating the air,
the title to the property conveyed by the trust deed being
exactly where it was before the litigation commenced, and the
party which had acquired possession by that litigation sub-
ject to an obligation to account as a mortgagee in possession.

Upon what is this contention based?  The respondents say
that the property conveyed by the trust deed was all in Ala-
bama, although the deed recites that part of it was in Georgia;
that it originally belonged to the Alabama company; that that
company executed the trust deed, although the resolution
incorporated in the trust deed purports to have been passed at
a meeting of the directors held at the office of the company
in West Point, Georgia; that the Alabama company was not
made a party to the foreclosure proceedings and could not
have been, because the plaintiff was a citizen of Alabama, and.
making the Alabama company a defendant would have ousted
the court of jurisdiction; that the subsequent owner of the
property, another Alabama company, was also not made a
party to those proceedings, and that therefore they were *res
inter alios acta*, and in no way binding upon either Alabama
company.  It is also insisted by the respondents that the so-

called ancillary bill filed by the petitioner was not in any sense of the term an ancillary but in fact an original bill, and that under section 720, Rev. Stat., the Federal court had no power to restrain the further proceedings in the state Chancery Court.

*Prima facie,* the United States Circuit Court had jurisdiction of the foreclosure bill. Diverse citizenship was alleged and admitted, and the relief sought was the foreclosure of a trust deed covering property partially in Georgia and partially in Alabama. The bill in the state court challenged the decree in the United States Circuit Court, denied its efficacy to transfer title, on the ground that the Alabama and Georgia Manufacturing Company (the grantor in the trust deed and the original owner of the property) and the Huguley Manufacturing Company (a purchaser and subsequent owner) were both corporations of Alabama and citizens of the same State with the plaintiff, whereby a case was presented of which the Federal courts could not take jurisdiction. The specific allegations were these:

"That a corporation, known as the 'Alabama and Georgia Manufacturing Company,' alleged to be a corporation organized under the laws of Georgia only, and said Huguley Manufacturing Company, together with the said W. T. Huguley, were the sole defendants to said bill, said W. T. Huguley being made defendant as co-trustee, alleged to be interested adversely. The Alabama and Georgia Manufacturing Company, originally chartered and organized as a corporation under said act of the general assembly of the State of Alabama, never has been made a defendant thereto, and never appeared as a party to said cause, the president of said corporation, to wit, W. H. Huguley, himself likewise a citizen and resident of the county of Chambers, State of Alabama, never having been served with notice either of said alleged default of interest, as expressly required under the terms of the trust deed, or notice of said suit of foreclosure against said Alabama and Georgia Manufacturing Company. No attempt was made, by either

direct or ancillary proceedings, to subject the property lying in the State of Alabama to this suit. A portion of the property was erroneously described in the said mortgage as lying within the county of Harris, in the State of Georgia, while the orators aver that all of said property was and is situated within the county of Chambers, in the State of Alabama.

"The property was not advertised in the State of Alabama, nor was any sale or pretense of sale conducted in said State."

And again —

"The Huguley Manufacturing Company, a corporation, avers that it purchased and acquired all the property herein above described subject to said mortgage, and is now the owner of the same, subject to said mortgage."

The answer filed to the ancillary bill alleges that both plaintiffs in the state court were corporations chartered under the laws of Alabama. It further states:

"That while said Alabama and Georgia Manufacturing Co. may have been incorporated in the State of Georgia, it was also incorporated in the State of Alabama prior to the incorporation in the State of Georgia. And these respondents aver that there never was, by the action of the State of Georgia and Alabama, any merger or consolidation of said two corporations. They, therefore, allege that said Alabama and Georgia Manufacturing Company, incorporated under the laws of Alabama, was a distinct and separate legal entity from the Alabama and Georgia Manufacturing Company incorporated under the laws of Georgia.

\* \* \* \* \* \* \* \*

"That while said Huguley Manufacturing Company was alleged in said bill to have been incorporated under the laws of Georgia, the defendants aver that as a matter of fact it was never so incorporated."

It also avers that the property is all in the State of Alabama. The case was submitted on bill and answer.

It thus appears that a party carries on a litigation in a Federal court on its merits, and when beaten in that court goes

into a state court and claims that, by reason of his own un-truthful admission of citizenship, the Federal court assumed a jurisdiction which in fact it could not take, and that all the proceedings in that court must go for naught.    Under such circumstances there can be no doubt that the Federal court may inquire and determine whether its proceedings were a nullity, and such inquiry is not an original proceeding, but ancillary to those which have already been had.    In other words, a Federal court, exercising a jurisdiction apparently belonging to it, may thereafter, by ancillary suit, inquire whether that jurisdiction in fact existed.    It may protect the title which it has decreed as against every one a party to the original suit and prevent that party from relitigating the questions of right which have already been determined. *French, Trustee,* v. *Hay,* 22 Wall. 250; *Cole* v. *Cunningham,* 133 U. S. 107; *Root* v. *Woolworth,* 150 U. S. 401.    In this case, on page 410, it was said:

"It is well settled that a court of equity has jurisdiction to carry into effect its own orders, decrees, and judgments, which remain unreversed, when the subject-matter and the parties are the same in both proceedings.    The general rule upon the subject is thus stated in Story's Equity Pleading, 9th ed., § 338: 'A supplemental bill may also be filed, as well after as before a decree; and the bill, if after a decree, may be either in aid of the decree, that it may be carried fully into execution.    . . .

"The jurisdiction of courts of equity to interfere and ef-fectuate their own decrees by injunctions or writs of assistance in order to avoid the relitigation of questions once settled be-tween the same parties, is well settled.    Story's Eq. Jur. § 959; *Kershaw* v. *Thompson,* 4 Johns. Ch. 609, 612; *Schenck* v. *Conover,* 13 N. J. Eq. [2 Beasley] 220; *Buffum's Case,* 13 N. H. 14; *Sheperd* v. *Towgood,* Tur. & Rus. 379; *Davis* v. *Black,* 6 Beav. 393.    In *Kershaw* v. *Thompson,* the authorities are fully reviewed by Chancellor Kent, and need not be reëxamined here."

See also *Julian* v. *Central Trust Company,* 193 U. S. 93,

which is very much in point.   There, after a suit in a Federal court for foreclosure of a mortgage resulting in decree, sale, confirmation and delivery of possession to the purchaser, a state court attempted to subject the property to a judgment rendered in that court against the mortgagor on a cause of action arising subsequently to the delivery of possession under the foreclosure proceedings.   And it was held within the competency of the Federal court to restrain the action in the state court in order to protect the title it had conveyed by the foreclosure proceedings.   In the opinion it was said (p. 112):

"If the sheriff is allowed to sell the very property conveyed by the Federal decree, such action has the effect to annul and set it aside, because in the view of the state court it was ineffectual to pass the title to the purchaser.   In such case we are of opinion that a supplemental bill may be filed in the original suit with a view to protecting the prior jurisdiction of the Federal court and to render effectual its decree.   *Central Trust Co. of New York* v. *St. Louis, Arkansas &c. Railroad Co.*, 59 Fed. Rep. 385; *Fidelity Ins. Trust & Safe Deposit Co.* v. *Norfolk & W. R. R. Co.*, 88 Fed. Rep. 815; *State Trust Co.* v. *Kansas City &c. R. R. Co.*, 110 Fed. Rep. 10.

"In such cases where the Federal court acts in aid of its own jurisdiction and to render its decree effectual, it may, notwithstanding sec. 720, Rev. Stat., restrain all proceedings in a state court which would have the effect of defeating or impairing its jurisdiction.   *Sharon* v. *Terry*, 36 Fed. Rep. 337, per Mr. Justice Field; *French* v. *Hay*, 22 Wall. 250; *Deitzsch* v. *Huidekoper*, 103 U. S. 494."

It must be borne in mind in this connection that the Huguley Manufacturing Company was made a party defendant and appeared in the original foreclosure suit, and also that it had purchased the property and owned it subject to the trust deed. So the bill in the state court specifically avers, and the record of the proceedings in the foreclosure suit shows that it took an active part in the litigation.   It admitted in that litigation that it was a citizen of Georgia.   It now goes into a state court

and, averring that it is a citizen of Alabama, the State of which the plaintiff was a citizen, contends that the United States court in Georgia had no jurisdiction; but having been in that United States court litigating the case on its merits and its rights there determined, that court has power to protect its decree as against any action which such litigant may take in any other court.

It must also be remembered that the trust deed described the property conveyed as situated partly in Georgia and partly in Alabama. The Federal court sitting in Georgia had jurisdiction to foreclose that trust deed. *Muller* v. *Dows*, 94 U. S. 444. Even if there were errors or irregularities in the proceedings they would not affect the matter of jurisdiction, and as those proceedings have been sustained on appeal we may assume that they were free from errors.

Where parties litigate in a Federal court, whose jurisdiction is invoked on the ground of diverse citizenship, and that diverse citizenship is alleged and admitted, the judgment or decree which is entered is conclusive and cannot be upset by either of them in any other tribunal on the mere ground that there was in fact no diverse citizenship. *Skillern's Executors* v. *May's Executors*, 6 Cranch, 267; *McCormick* v. *Sullivant*, 10 Wheat. 192; *Hancock* v. *Holbrook*, 119 U. S. 586. In *Des Moines Navigation Company* v. *Iowa Homestead Company*, 123 U. S. 552, 557, we said:

"It was settled by this court, at a very early day, that, although the judgments and decrees of the Circuit Courts might be erroneous, if the records failed to show the facts on which the jurisdiction of the court rested, such as that the plaintiffs were citizens of different States from the defendants, yet that they were not nullities, and would bind the parties until reversed or otherwise set aside."

In *Dowell* v. *Applegate*, 152 U. S. 327, the validity of a decree rendered by a Federal court was challenged on the ground of a want of jurisdiction. In the opinion the question was thus stated (p. 337):

"If the Federal court erred in assuming or retaining jurisdiction of Dowell's suit—a question not necessary to be examined—would it follow that its final decree, being unmodified and unreversed, can be treated as a nullity when assailed collaterally by one who was a party to the suit in which it was rendered?"

And after quotations from several authorities the conclusion was reached (p. 340):

"This disposes of the first objection urged against the decree in the Federal court under which Dowell purchased. That decree cannot be treated, in this suit, as void for want of jurisdiction."

See also *Evers* v. *Watson*, 156 U. S. 527.

Some of these cases, as appears from the quotations, go to the extent of holding that, although on the face of the record, jurisdiction does not appear, yet the judgments or decrees are binding upon the parties thereto and cannot be assailed collaterally. *A fortiori*, must it be true that when on the face of the record jurisdiction appears the judgment or decree must be held conclusive against a collateral attack by either of the parties thereto. The Huguley Manufacturing Company was, as is conceded in these ancillary proceedings, a party to the original litigation, and cannot now be permitted to challenge the jurisdiction of the Federal court on the ground that its admission of citizenship was an error, and that a correct statement would have disclosed a lack of jurisdiction.

As appears from the record, the Huguley Manufacturing Company was the owner of the equity of redemption at the time the foreclosure suit was instituted. It, therefore, was unnecessary to make the original grantor in the trust deed a party to the litigation. All that could be accomplished by its presence would be a decree putting at an end all question of its interest, and, possibly, if a sale did not pay the debt, a judgment over for the deficiency. But neither of these results would affect the jurisdiction of the court, so far as the owner of the equity of redemption is concerned, or impede

the transfer of the title by foreclosure and sale to the purchaser.

Under the averments of the ancillary bill and answer it must be accepted that there were two corporations under the same name, the Alabama and Georgia Manufacturing Company, one chartered in Alabama, and the other in Georgia. It is doubtless true that, for the purposes of jurisdiction in the Federal courts, these corporations are deemed to be citizens of the States in which they were organized. It is also true that there was no formal merger of the two corporations into one; that they remained in law two separate legal persons, and that each was entitled to corresponding rights. But courts will sometimes look beyond the formal and corporate differences. Especially is this true of courts of equity. Substantial rights will be regarded rather than the mere matter of organization. *Lehigh Mining & Manufacturing Company* v. *Kelly*, 160 U. S. 327, illustrates this. There it appeared that the Virginia Coal and Iron Company was a corporation organized under the laws of Virginia, and therefore a citizen of that State; that it claimed title to certain lands in Virginia in the possession of the defendant, also a citizen of Virginia. There being no diversity of citizenship, an action could be maintained only in a court of the State. To avoid this and to place the litigation in the Federal court the stockholders of the coal and iron company organized under the laws of Pennsylvania the Lehigh Mining and Manufacturing Company. The former company thereupon conveyed all its rights to the latter, which brought its action for the recovery of the property in the United States Circuit Court for the District of Virginia. While it was conceded that the purpose with which a party makes a conveyance does not affect the title of his grantee, and while it was not doubted that the two corporations were separate entities, yet it was also held that, inasmuch as the stockholders in each were the same, and the organization of the Pennsylvania company was only for the purpose of getting the litigation into the Federal court, it was a fraud on the jurisdiction of that

court, and its order dismissing the action for want of jurisdiction was affirmed. It was said in the opinion (p. 339):

"The arrangement by which, without any valuable consideration, the stockholders of the Virginia corporation organized a Pennsylvania corporation and conveyed these lands to the new corporation for the express purpose—*and no other purpose is stated or suggested*—of creating a case for the Federal court, must he regarded as a mere device to give jurisdiction to a Circuit Court of the United States and as being, in law, a fraud upon that court, as well as a wrong to the defendants. Such a device cannot receive our sanction. The court below properly declined to take cognizance of the case."

In the case before us there were also two corporations—distinct legal entities—yet bearing the same name, the Alabama and Georgia Manufacturing Company. It may well be doubted whether any injustice has been done to the Alabama company by the long litigation. In the brief of one of the counsel for respondents, after stating the organization of the Alabama company, it is said:

"In order to carry out the general plans and purposes of the incorporators and organizers of the said *Alabama* company, thus already organized and established, it was deemed necessary and important that these same original incorporators and organizers of the said Alabama corporation and their successors should control the water rights of the Chattahoochee River, not only through the riparian rights already granted them on the western or Alabama side of the river by the State of Alabama, but through those of the State of Georgia on the *eastern* side of the river as well, *i. e.*, at the point on the eastern bank opposite where their manufacturing plant in Alabama had already been located. These incorporators had in view the then purpose of utilizing, if not immediately, at least at some future time, the recognized fine water power of the intervening Chattahoochee River, by the proposed acquisition of other lands on the eastern or Georgia side of the river, and the erection thereon of another *independent* manufacturing plant, and

in such event, of using Columbus, or La Grange, Georgia, for *its* offices and shipping points. To that end the said incorporators did not elect to ask the legislature of Georgia for any express statutory license authorizing the *preexisting Alabama* company to exercise in Georgia the same powers and rights which had been given it by the parent State of its creation (Alabama), *i. e.*, that it be '*domesticated*' in Georgia by the laws of that State, but the application was for the creation of a *separate* and *independent* corporation under the same name; and on March 21, 1866, 'The Alabama and Georgia Manufacturing Company,' as a second, distinctly independent corporation, was granted a charter by the legislature of the State of Georgia."

Whatever may have been within the scope of the ulterior purpose of the Georgia incorporation, the immediate purpose was the development of a single plant, and that purpose was carried into effect. By the charters the office of the Alabama company was located in Alabama and that of the Georgia company in Georgia. When the trust deed was executed it was executed in the name which was common to both corporations, but in pursuance of resolutions passed at an office in Georgia. It would be unjust to impute to these incorporators a design to mislead the holders of the indebtedness of the company by giving to them a security which rested alone upon the inconsiderable fraction of property then located in Georgia, when, on the face of the instrument, it purported to convey the entire plant. Evidently the proceedings were had on the supposition that there was but a single entity. That entity was indebted, and it gave the trust deed as security therefor. When the foreclosure suit was filed it would be also an unjust imputation to suppose that the owners of the property carried on the litigation for years, knowing that the proper parties were not present in court and that the outcome of that litigation meant nothing. Evidently this defense, springing from the existence of two corporations, was an afterthought, when all other resources had failed, and equity may wel' say that to

sustain the present contention would give judicial sanction to
inexcusable trifling with courts.   It is always to be understood
that Federal tribunals are not moot courts, and that parties
having substantial rights must when brought before those
tribunals present those rights or may lose them.

The judgment of the Court of Appeals is reversed and that
of the Circuit Court is

*Affirmed.*